26CA0555 Peo in Interest of Castello 05-07-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0555
Arapahoe County District Court No. 26MH130
Honorable Harold Clayburn Hurst, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Trenton Castello,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE DUNN
J. Jones and Fox, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

---

Ronald Carl, County Attorney, Meghan Rubincam, Senior Assistant County
Attorney, Aurora, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Trenton Castello appeals the district court's order certifying him for short-term treatment and authorizing the involuntary administration of several medications.  We affirm.

## I.     Background

¶ 2     Castello has a longstanding history of schizoaffective disorder that has required multiple psychiatric hospitalizations over the past ten years.  In February 2026, Castello was involuntarily admitted to Bridge House, experiencing delusions, hallucinations, and disorganization.  He also exhibited negative symptoms, including poverty of thought, thought blocking, and speech latency.  This was Castello's third hospitalization within the past year.

¶ 3     A Bridge House physician requested that Castello be certified for short-term mental health treatment under section 27-65-109, C.R.S. 2025, and a separate psychiatrist sought an order authorizing the involuntary administration of four antipsychotic medications, one mood stabilizer, an anti-anxiety medication, and a medication to treat side effects.

¶ 4     After Castello objected, the district court held an evidentiary hearing.  Castello did not appear at the hearing, but the court heard testimony from his treating psychiatrist.  After the hearing,

the court entered an order certifying Castello for short-term treatment. The court found by clear and convincing evidence that Castello has a mental health disorder, is gravely disabled, and had refused voluntary treatment. And finding that the People had proved all four elements of the test set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), the court also authorized the involuntary administration of all but one of the requested medications.

## II. Short-Term Certification

¶ 5 Castello first argues that the evidence was insufficient to support the district court's finding that he was gravely disabled, and therefore the district court erred by certifying him for short-term treatment. We disagree.

### A. Applicable Law and Standard of Review

¶ 6 A district court may certify a person for involuntary short-term treatment if it finds, by clear and convincing evidence, that the person has a mental health disorder and, as a result, is a danger to himself or others or is gravely disabled. §§ 27-65-109(1)(a), 27-65-113(1), C.R.S. 2025.

¶ 7    As relevant here, a person is "gravely disabled" when he is "incapable of making informed decisions about or providing for [his] essential needs without significant supervision and assistance from other people." § 27-65-102(17), C.R.S. 2025.  As a result of the inability to make informed decisions, a gravely disabled person is at risk of, among other things, "significant psychiatric deterioration, or mismanagement of the person's essential needs that could result in substantial bodily harm."  *Id.*; *see also People v. Taylor*, 618 P.2d 1127, 1134 (Colo. 1980) (interpreting "basic personal needs" to mean "those fundamental necessities of human existence," including "food, shelter, clothing, and medical care").

¶ 8    Whether a person is gravely disabled is a fact-specific determination that depends on the person's condition at the time the finding is made.  *People in Interest of Vivekanathan*, 2013 COA 143M, ¶ 14.  We review the record as a whole and in the light most favorable to the People to determine whether the evidence is sufficient to support the district court's decision.  *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.  We defer to the court's factual findings if sufficient record evidence supports them.  *Id.*

## B. Grave Disability

¶ 9    The district court found that Castello is gravely disabled because his mental illness is "impacting his ability to recognize reality" and "his ability to take care of himself." The court also found that without treatment Castello would "significantly deteriorate" and is at "risk of harm to his life."

¶ 10    The record supports these findings. The psychiatrist testified that Castello is "extremely" delusional, disoriented, and disorganized. She explained that Castello "is unsure of his own identity," and believes that he is dead, his kidney has been removed, he swallowed something that caused his voice to change, he has bilateral frostbite in his hands and feet, and his mother has been replaced by an imposter. The psychiatrist testified that "this is not somebody who would [be] able to take care of themselves at all, if they left the hospital." And she expressed concerns that Castello was "not improving" and "his presentation continues to get worse," including admitted suicidal thoughts.

¶ 11    Arguing that he is not gravely disabled, Castello emphasizes that he is eating regularly, maintains personal hygiene, and can communicate his needs effectively with his treatment team. He also

4

argues that his expressed housing preference and access to family support indicate that he can make informed decisions regarding his care and living arrangements.

¶ 12    True, the psychiatrist testified that Castello "is eating fine," is "physically able-bodied," is "able to ask for his needs," "has family support," and has "[a]ccess to shelter."  But the psychiatrist also testified that Castello would not be able to care for himself "at all" if he left the hospital.  She explained that he lacks insight into "his ability to care for himself," "has never been able to work," and is "not . . . able to go in[to] the community safely alone."

¶ 13    Viewing the record as a whole and in the light most favorable to the People, we conclude that this evidence is sufficient to support the district court's finding that Castello is gravely disabled.  *See* § 27-65-102(17); *see also Ramsey*, ¶ 23 ("The resolution of conflicts in testimony and determinations of the credibility of the witnesses are solely within the province of the fact finder.").  Thus, the court did not err by certifying Castello for short-term treatment.

### III.    Involuntary Administration of Medication

¶ 14    Castello next contends that the evidence was insufficient to support the district court's order authorizing the involuntary administration of medication to him.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 15    A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Medina*, 705 P.2d at 973.

¶ 16    Application of the *Medina* test involves mixed questions of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they have record support and review its legal conclusions de novo.  *Id.*  When a patient challenges

the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The treating psychiatrist's testimony alone may suffice. *Id.* at ¶ 30.

### B.	Need for Treatment and Legitimate Interest in Refusing Treatment

¶ 17	Castello challenges only the fourth *Medina* element; he contends that the evidence was insufficient to prove that his need for the requested medications is sufficiently compelling to override his bona fide and legitimate interest in refusing to take them.

¶ 18	In assessing this element, a court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina*, 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 19	Castello contends that the state's interest in treating him is insufficient to overcome his bona fide and legitimate interest in

avoiding "potential side effects" of the requested medications. In support, he (1) recounts the testimony from the psychiatrist who explained the possible side effects associated with each of the requested medications; and (2) argues that given the severity of these possible side effects, his refusal is reasonable, considered, and rational.

¶ 20    But nothing in the record suggests that Castello refused medication because of possible side effects. Castello didn't testify, so we don't know if he had concerns about potential side effects. And the psychiatrist did not testify that Castello raised any concerns about side effects or that he had experienced any side effects. The only concerns about the medications that Castello raised with the psychiatrist were (1) his belief that medications had "killed him in the past"; and (2) that he did not want to be labeled "a psychotic."

¶ 21    Addressing these two stated concerns, the district court noted that the first was "not based in . . . reality" given that Castello is "clearly alive." As to the second concern, the court weighed Castello's desire "to avoid a label," against his serious prognosis without treatment. And the court found the prognosis sufficiently

compelling to override Castello's concern. The court also noted that there was no testimony that Castello had any physical ailments that would be "contraindicated with treatment" and that he had been treated successfully on antipsychotic medication in the past.

¶ 22 The district court's findings have record support. The psychiatrist testified that Castello's prognosis without treatment is "[s]ignificantly bad," and "[a]t worst, it's death." She stressed that Castello "has already decompensated," and "needs meds yesterday." The psychiatrist also testified that there is no alternative medical explanation for his symptoms and many of the physical maladies he has complained of are unsubstantiated. And she confirmed that no alternative treatment is available to treat Castello's illness and that his mother reported improvement with certain antipsychotics in the past.

¶ 23 We acknowledge Castello's stated concerns about the medication and the stigma that can be associated with taking these medications. But sufficient evidence supports the court's finding that the need to treat him is sufficiently compelling to override his concerns. *See R.K.L.*, ¶¶ 13, 30.

¶ 24     Thus, we conclude the evidence was sufficient to support the order authorizing the administration of involuntary medication.

## IV.   Disposition

¶ 25     The order is affirmed.

JUDGE J. JONES and JUDGE FOX concur.